James G. Murrin and Willetta D. Murrin, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Walter P. Dolle, Jr., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Estate of Walter P. Dolle, Sr., Deceased, Walter P. Dolle, Jr., and Willetta D. Murrin, Executors, and Bessie H. Dolle, Surviving Wife, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 45376, 45377, 45378.    Filed June 24, 1955.

*Carl Tangeman, Esq.*, and *Burton E. Robinson, Esq.*, for the petitioners.

*Robert E. Johnson, Esq.*, for the respondent.

504

OPINION.

VAN FOSSAN, *Judge:* The deficiencies are based upon respondent's determination that certain transactions of the petitioners which occurred in 1944 constitute a partial liquidation of Fireproof, the resultant gain being taxable under section 115 (c) of the Internal

Revenue Code of 1939.[1]  Petitioners contend that the transaction comes within the statutory definition of a corporate reorganization as set out in section 112 (g) (1) (D),[2] and that any gain from such a reorganization was within the nonrecognition provision of section 112 (b) (3).[3]

The issue is pivoted upon a conveyance of realty in 1944.  The circumstances surrounding the transfer can be summarized as follows. The several petitioners, which we have individually denominated as the father, mother, son, daughter, and son-in-law, were the shareholders during 1944 of a corporation named Fireproof.  It was in the nature of a closely held family enterprise.  Fireproof owned 2 parcels of realty, the corporate business of moving and storage being conducted in one and the other being leased.

The son-in-law was the general manager and was the only shareholder that was actively engaged in the conduct of the business.  The father and son, though not active, were on the corporate payroll prior to the reorganization and other relatives had drawn salaries in prior years when they had owned shares.  The son-in-law was discontented with this situation and with the fact that he and his wife had only the minority interest in the enterprise to which he had devoted many years of service.  Due to this discontent he had threatened to terminate his association with the company.  The father, who was the dominant figure, recognizing the possible loss of the son-in-law's services, held a conference with him at which the son and Fireproof's attorney also were present.  The text of this discussion was never reduced to writing but both the son and the attorney testified that the parties decided upon a plan of reorganization for the primary purpose of satisfying

[1] SEC. 115.  DISTRIBUTIONS BY CORPORATIONS.

(c) DISTRIBUTION IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock.  The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112.  In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *

[2] SEC. 112.  RECOGNITION OF GAIN OR LOSS.

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22))—

(1) The term "reorganization" means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or * * *

[3] SEC. 112.  RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.—

*      *      *      *      *      *      *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

the son-in-law's demands. They also testified that a secondary reason for reorganizing was to protect the corporate realty from liability claims which were prevalent in the trade at that time.

Shortly after the conference, i. e., on March 31, 1944, the father transferred blocks of Fireproof shares individually to his son and daughter so as to equalize their share ownership. Pursuant to a corporate resolution of the same day, all the petitioners, except the son-in-law, surrendered varying portions of their Fireproof stock. A new corporation (Briar-Gate) was formed for the purpose of acquiring and holding title to the Fireproof realty. Both realty parcels were then conveyed directly from Fireproof to Briar-Gate. At the same time, in accordance with a resolution, the new corporation, Briar-Gate, issued shares of its stock to the petitioners in proportion to the Fireproof shares which they had surrendered.

Subsequent to the aforementioned transactions, the daughter and son-in-law owned a controlling interest in Fireproof. The petitioners, other than the son-in-law, held a decreased number of Fireproof shares but had acquired stock in the new corporation, Briar-Gate. Fireproof continued to occupy the premises in which it conducted business but as a lessee rather than as owner.

Respondent contends that the transactions cannot be brought within the nonrecognition provisions of section 112 (b) (3) due to the absence of a plan of reorganization evidenced by some sort of written document. This point has been raised in previous cases and the fact that the plan was not reduced to writing has been held not to preclude a "reorganization pursuant to plan" within the section if the other circumstances warrant a finding that such a plan did in fact exist. *William H. Redfield*, 34 B. T. A. 967; *Hortense A. Menefee*, 46 B. T. A. 865; *Edison Securities Corporation*, 34 B. T. A. 1188. We have no reason for discounting the testimony of the corporation attorney and the son that a plan of reorganization was formulated and agreed upon at the conference. It is our opinion that the record here, including the happening in one day of the several events, warrants such a finding. We so hold.

But, assuming the existence of a plan, respondent denies that the transactions of the instant case involved an exchange of stock for stock in another corporation and thus are not within the cited section. In support of this, our attention is directed to the corporate resolutions of both Fireproof and Briar-Gate along with a form filed with the State Securities Division. Literally construed, these written declarations indicate that the realty was transferred to the shareholders in return for the surrender of stock and that the shareholders were conveying the properties to the newly formed Briar-Gate. What actually occurred, however, is that the properties were conveyed directly from Fireproof to Briar-Gate and the shareholders never had title. Further,

Fireproof's attorney testified that he phrased the corporate resolutions and State registration form in such a way so as to comply with, while not being inconvenienced by, certain State laws. Moreover, corporate declarations could not alter the events as they actually happened. "Questions of taxation must be examined by what was actually done rather than the declared purpose of the participants." *Weiss* v. *Stearn*, 265 U. S. 242.

Even if it be assumed that the properties were conveyed directly to Briar-Gate as the nominee of the shareholders, respondent's position could not be sustained. Each of the petitioners involved in the surrender had mutually agreed to and was obligated to convey the properties to Briar-Gate immediately. At best, they would have had only bare legal title and would have been a mere conduit. "A given result at the end of a straight path is not made a different result because reached by following a devious path." *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609.

Respondent cannot atomize the several transactions and view the surrender merely as an exchange for undivided fractional shares in the realty. See *Richard H. Survaunt*, 5 T. C. 665, affd. 162 F. 2d 753. By such a view, each step is considered as though it happened alone. Such treatment of several related transactions has been held not tenable. *Helvering* v. *New Haven & S. L. R. Co.*, 121 F. 2d 985.

All of the transactions occurred in one day and the first would not have happened without a view to the last, for each of the several steps was in pursuance of a previously agreed upon plan. "Where transfers are made pursuant to such a plan of reorganization, they are ordinarily parts of one transaction and should be so treated in application of the well-settled principle that, in applying income tax laws, the substance, and not the form, of the transaction shall control." *Starr* v. *Commissioner*, 82 F. 2d 964, 968.

The change effected only a readjustment of continuing interests in property under a modified corporate arrangement. As a result of the transactions, those persons who had previously owned 92 per cent of Fireproof stock now held 72 per cent and became 100 per cent owners of the stock of the newly formed Briar-Gate. The Fifth Circuit in *Reilly Oil Co.* v. *Commissioner*, 189 F. 2d 382, affirming 13 T. C. 919, held that there was sufficient continuity of interest where 69 per cent of the shareholders participated in the formation of the new corporation. The court said at page 384:

We are aware of no authority or valid reason which would support the contention that all or substantially all of the transferor's shareholders must acquire an interest in the corporation before a nontaxable reorganization can be effected.

In addition to conforming to the literal requirements of the statute, the reorganization served a proper corporate purpose. As a result of the transaction, the daughter and son-in-law, who formerly held a

minority interest, had a 58 per cent interest in Fireproof and the corporation thereby retained the services of its general manager. Furthermore, since title was now held and owned by a separate entity, the realty would be insulated from liability claims.

The case thus presents a factual pattern within the statutory definition of a reorganization, as set out in section 112 (g) (1) (D). An exchange of stock by parties to such a planned reorganization results in nontaxable gain within section 112 (b) (3) and the respondent's determination is, therefore, incorrect.

*Decisions will be entered under Rule 50.*